FILED

IN THE UNITES STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 DEC -7 PM 1: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ERIKA SUZANNE LACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-98-AR-667-M |
| | ) | |
| CAGLE'S, INC. | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
DEC 7 1998

## MEMORANDUM OPINION

The court presently has before it a motion filed on September 14, 1998 by defendant, Cagle's, Inc ("Cagle's"), which seeks to enforce a settlement agreement and to dismiss all claims brought by plaintiff, Erika Suzanne Lackey ("Lackey"). Lackey claims that she was sexually harassed during her brief employment with Cagle's, and she brings suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"). Cagle's asserts that Lackey's previous attorney, Theresa Cannady, entered into a binding agreement to settle all claims in this action, which Lackey disputes. Cagle's now seeks enforcement of the purported settlement agreement and a dismissal of this action.

## Undisputed Facts

In February of 1997, Lackey was hired to work at Cagle's poultry plant in Collinsville, Alabama. She worked there for three days before resigning as a result of alleged sexual harassment by a Cagle employee. After filing a discrimination charge with the EEOC in March, 1997, Lackey signed a "Retainer Contract" with attorney Teresa Cannady, the first paragraph of which states:

> I, Erika Suzanne Lackey, do hereby employ TERESA L. CANNADY and any other lawyers she may deem necessary to associate with her in representing me in the matter of a sexual harassment charge against Cagle's Poultry Plant in Collinsville, AL. I further authorize said lawyer to enter in whatever arrangements and settlements that may be necessary to obtain my rights, or to proceed to trial in the United States District Court and/or any other trial courts and all appellate courts, including the United States Supreme Court.

After Cannady obtained a Notice of Right to Sue from the EEOC, she notified Cagle's of her preparation to sue on Lackey's behalf. Settlement negotiations began between Cannady and counsel for Cagle's, Martin Steckel. On March 4, 1998, Steckel made a settlement offer to Cannady by phone. Later that same day, Cannady sent a letter via fax to Steckel, which stated in part "My client, Erika Lackey, is willing to accept the offer you made to me this morning." *Exh. E, Steckel Aff. at 5.* Several days later, at Cannady's request, Steckel faxed draft release forms to her, which included the statement "Ms. Lackey, in consideration of the total sum of THREE THOUSAND THREE HUNDRED

AND TWENTY FIVE DOLLARS ($3,325) agrees to forever release and discharge... Cagle's Inc... from any and all claims[.]" After Steckel and Cannady edited the draft to reflect Cannady's requests regarding the timing of payment, Steckel forwarded to Cannady the final release forms, along with a check for $3,325, via express courier. Cannady signed the settlement agreement and endorsed the check, then forwarded both to Lackey. Lackey refused to sign the agreement and terminated Cannady. After hiring different counsel, Lackey filed the present action on March 20, 1998.

## Analysis

The court agrees with Cagle's reading of Lackey's arguments opposing the motion to enforce settlement, and the court adopts the following statements from Cagle's well-written and persuasive brief:

> [P]laintiff does not dispute, but rather admits, that her retainer contract was in effect [at the time Cannady accepted the settlement offer]. Finally, plaintiff does not dispute that her attorney [Cannady] settled her claims [before Lackey terminated her].
> *Def.'s Brief in Reply*, at 1.

That Cannady agreed to the settlement offer by Steckel could not be clearer. Cannady voiced her acceptance of the settlement by phone, by fax, and ultimately by her signature on both Cagle's check and the release documents. What Lackey disputes is whether

she understood that the Retainer Contract, which she voluntarily signed, in fact gave Cannady express authority to settle Lackey's claims. Lackey attempts to nullify the provisions of the Retainer Contract by suggesting that she and Cannady "perhaps had a misunderstanding." This court refuses to excuse Lackey from the very clear wording of the Retainer Contract, especially in light of the fact that Lackey has previously sought enforcement of the attorney's fee provisions of that very contract during the course of this litigation.[1] Lackey cannot pick and choose to comply with particular contract obligations according to whim. Because Lackey is bound by the Retainer Contract, this court will hold her to its specific provision which expressly grants Cannady the authority to settle all claims against Cagle's.

Lackey states in her affidavit that "At no time did I agree to accept $3,325 to settle the above-reference[d] mater." *Pl.'s Aff.*, at 2. Whether Lackey ever personally agreed to accept $3,325 in settlement is beside the point. Where an express authorization exists, as in this case, "When plaintiff's attorney agreed to settle, plaintiff agreed to settle." Cagle's directs

---

[1] After her termination, Cannady filed an attorney's lien to recover such amount as she would become entitled to, under the Retainer Contract, out of any amounts that Lackey might eventually recover in this action. Lackey sought to limit Cannady's possible recovery, citing specific provisions of the Retainer Contract, and Cannady conceded the point. After this court entered an order limiting Cannady's potential recovery to the stipulated amount, Cannady withdrew the attorney's lien.

the court to the rule of *Turner v. Burlington Northern Railroad Company*, 771 F.2d 341 ("*Turner*"), in which the Eighth Circuit said "Once it is shown that an attorney has entered into an agreement to settle a case, a party who denies that the attorney was authorized to enter into a settlement has the burden to prove that the authorization was not given." *Id.*, at 346. Although not binding in this case, the court agrees that the *Turner* rule is appropriate, and Lackey has not satisfied her burden of proving that the authorization was not given.

Of course, Lackey is entitled to rely upon the good faith of her attorney during settlement negotiations. Therefore, even if Cannady had agreed to settlement after being expressly authorized to do so, such a settlement might not be enforceable if it were the product of fraud, were unconscionable, or otherwise violated public policy. However, Lackey has not challenged the reasonableness of the settlement, and she certainly has offered no evidence suggesting its unreasonableness. Neither has she alleged fraud, unconscionability, or any other policy-related reason why the settlement contract, on its own merits, should not be enforced.

### Conclusion

For the foregoing reasons, the court finds that Lackey authorized Cannady to enter a settlement on her behalf, and that

Cannady did enter a settlement disposing of all claims against Cagle's. Lackey will be held to the obligations under that settlement agreement. Accordingly, Cagle's motion to enforce is due to be granted, rendering the motion to dismiss moot. A separate and appropriate order will be entered.

DONE this 7th day of December, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE